# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| JANA BRUNE | PLAINTIFF |
| v. | CAUSE NO. 1:18CV298-LG-RHW |
| TAKEDA PHARMACEUTICALS U.S.A., INC.; TAKEDA PHARMACEUTICALS AMERICA, INC.; and JOHN & JANE DOES 1-5 | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

**BEFORE THE COURT** is the [45] Motion to Dismiss Plaintiff Jana Brune's Second Amended Complaint filed by Defendants Takeda Pharmaceuticals U.S.A., Inc. ("Takeda USA") and Takeda Pharmaceuticals America, Inc. ("Takeda America"). The Motion argues that Brune's Second Amended Complaint should be dismissed because she fails to state a claim for which relief may be granted. Having considered the submissions of the parties, the record, and relevant law, the Court concludes that Defendants' Motion to Dismiss should be granted. Plaintiff's claims will be dismissed with prejudice.

## I. BACKGROUND

Jurisdiction in this case exists under 28 U.S.C. § 1332. (*See* Order Den. Mot. Remand, ECF No. 16.) In a [41] Memorandum Opinion and Order dated July 24, 2019, the Court dismissed without prejudice the claims in Plaintiff's First Amended Complaint for failure to state a claim for which relief may be granted. (*See* Mem. Op. & Order 23, ECF No. 41.) The Court additionally granted Plaintiff leave to

amend her allegations through a subsequent pleading. On August 7, 2019, Plaintiff filed her [42] Second Amended Complaint.

Brune alleges she was employed by Takeda USA and Takeda America as a sales representative in Mississippi from 2002 through April 2016. She says that she was a high-performing sales representative and often earned various performance-based awards and statuses in her performance reviews. However, says Brune, her work experience took a turn-for-the-worse when Rayf Clark – "a former salesman with no managerial experience" – became her district manager. (2d Am. Compl. 5, ECF No. 42.) Clark "constantly berated, verbally abused, cyber-bullied and badgered Plaintiff to the point she could no longer physically and mentally continue to work for Defendants." (*Id.*) She states that "Clark's actions, emails, and the false statement he spread about Plaintiff to her superiors and fellow employees rose to the level of willful, wanton, egregious, and outrageous conduct . . . ." (*Id.* at 5-6.)

Brune recounts several specific episodes. On February 9, 2016, Clark called her on the phone and proceeded to yell at and verbally abuse her, which reduced Clark to tears. She says that this caused her "severe emotional distress . . . requiring medical treatment." (*Id.* at 6.) Clark apologized to Brune on February 22, 2016 for making her cry and admitted that he had acted improperly. On April 1, 2016, Clark sent Brune an email stating,

> Per our discussion, if improvement is not observed during
> our next two-day field ride on April 14 and April 18 you
> will be placed on a Performance Improvement Plan.
> Moving forward it is important that you have an

> increased level of personal ownership around your
> professional skills growth and business results.

(*Id.* at 5-6.) This is despite the fact that, according to Brune, she placed in the top 2% in a national sales contest and finished in the top 15% of the region in sales in 2016. On May 28, 2016, Clark "forced Plaintiff, upon threat of termination, to meet him at Residence Inn [in] Gulfport . . . , where he forced her to sign a '60 Day Plan' of improvement or she would be immediately fired from her job."[1] (*Id.* at 6-7.)

Plaintiff says that Clark acted "with reckless disregard for the health and well-being of the Plaintiff" and intentionally sought "to harass, intimidate, berate, defame, and slander the Plaintiff's business reputation; and to cause Plaintiff to terminate her employment with Defendants." (*Id.* at 7.) Plaintiff says that she repeatedly complained about Clark's treatment of Plaintiff to the human resources department and to "Takeda's Cultural Liaison," Max James (who reported Plaintiff's concerns to Quin Hatfield, the regional manager), but nothing was done to change Clark's conduct or otherwise remedy the situation. (*Id.*) Plaintiff asserts that she was "forced from her employment with Defendants on or about April 15, 2016" (*id.* at 8), presumably amidst the two-day field ride which would determine whether she was placed on a Performance Improvement Plan.

Based on these allegations, she asserts claims for Defamation, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. As to defamation, she says that Defendants published false and defamatory statements

---

[1] The 60 Day Counseling Plan attached as an exhibit to the Second Amended Complaint is dated May 28, 2015, not 2016. (*See* 2d Am. Compl. Ex. 6, ECF No. 42-6.) Brune also alleges that she left her job in April 2016, making it further likely that this alleged episode occurred in 2015.

– 3 –

by means of Field Coaching Logs completed by Clark and sent to Hatfield and others at Defendants' corporate offices. She specifically identifies the following statements made in the March 4, 2015 log entry:

> [I]t is critical that you execute your plan with your HCP's in order to drive business to ultimately hit your WIG/goals. We've had several discussions regarding this component of sales execution. This was your Way Forward on October 22 and it was noted on your FCL in Nov 19. You continue to struggle with this, and on Wednesday your pre-call planning and execution did not meet expectations. While this did improve on Thursday, I'm concerned about the inconsistency that continues to be observed in this area. . . . [Y]ou had difficulty determining your HCP's belief in your product including how and when they would use it in their practices.

(*Id.* at 9 & Ex. 6, ECF No. 42-6.) She says these statements are false and were made by Clark for the purpose of defaming Plaintiff.

She also points to Clark's statements regarding her work performance in the February 8, 2016 log entry:

> Your last Way Forward was to make it part of your pre-call plan to execute an additional call with the staff member that complete Pas for their gout patients in your offices. I asked you to ensure your HCPs and staff members clearly understand the PA process for Gout patients and how they can get access to Uloric. During our time in the field you planned to cover this with Dr. H's nurse, but you did not execute it in your call. I did not observe you planning or executing a Uloric focus call with staff members that complete patient PA's in any other calls during our time in the field.
> . . .
> [Y]ou were not able to identify your HCP's belief of your product, belief of competitive products, and how they treat the disorders your products are indicated for your HCP's on most calls. By not knowing this information it was difficult and, in some cases, you were not able to

– 4 –

> determine an appropriate Learn and Share objective for
> your call.
> . . .
> I believe you cannot articulate your customer's belief and
> that you feel uncomfortable pre-call planning due to you
> not consistently planning and executing calls that
> generate dialogue and call continuity.

(*Id.* at 10-11 & Ex. 7, ECF No. 42-7.) She similarly says that these statements were false and made for the purpose of defaming her.

Plaintiff recounts statements made in the February 23, 2016 log too:

> Despite my coaching to not use written pre-call plan[s]
> you continued to use them before every call during our
> two days in the field. That said, I was unable to gauge
> any progress towards conducting an effective pre-call plan
> and setting a defined call objective in the absence of a
> written out plan.

(*Id.* at 11 & Ex. 8, ECF No. 42-8.) And in the March 15, 2016 log, Clark states,

> There was a lack of a clearly defined call
> objective/outcome, and this was evident during the
> execution of the call by the overall level of impact that
> was lacking on the majority of your calls. We've discussed
> this before . . . . You haven't consistently demonstrated
> the ability to strategically prepare for a call that
> ultimately ends in movement along the continuum for the
> customer. . . . Without a focused plan, it is hard to
> partner with the HCP in a meaningful way.
> . . .
> During our time in the field you were not able to
> consistently identify your HCP's belief of your product,
> competitive products, and how they treat the disorders
> your products are indicated for the HCP's in most of your
> calls. This led to calls in many cases that did not produce
> meaningful dialogue and seemed to lack customer impact.
> For example with Dr. K your pre-call plan for Colcrys did
> not include an objective or what you wanted to Earn/close
> your HCP to do. Without a call objective you did not plan
> what you wanted to Share or Learn from Dr. K. Your pre-
> call plan was simply: "Dr. K writes Colcrys. He knows

> there is a generic because he writes AG." This led to a
> call where you did not gain a commitment even after you
> found out that Dr. K started "low" with Colcrys and starts
> patients on one tablet three times per week. You did not
> suggest the proper dosing or our key message of having
> the patient have Colcrys on-hand for flares that may
> occur during the night. Without a planned call objective
> there was not a plan to Share a message or what you
> wanted to Learn, which led to a call with minimal impact.

(*Id.* at 11-12 & Ex. 9, ECF No. 42-9.) Plaintiff asserts that these statements falsely claim she failed to apply enough pressure on a health care provider to prescribe Takeda's products and otherwise falsely describe the manner in which she conducted her job duties.

Finally, Plaintiff identifies statements made in the April 1, 2016 email from Clark:

> I'd like to recap the meeting we had . . . regarding . . . the
> struggles you have had with planning and executing sales
> calls that delivers impacts to drive results, and the
> expectations moving forward. The specifics we covered
> were all tied to your behaviors that have the potential to
> impact HCP beliefs and behaviors (prescribing habits). In
> my time with you in the field I have not seen consistent
> thoughtful and effective pre-call planning for calls with
> your HCPs that are designed to create dialogue and earn
> additional business for your products.
> Per our discussion[,] if improvement is not observed on
> our next two day field ride on April 14 and 18 you will be
> place[d] on a Performance Improvement Plan. Moving
> forward it is important that you have an increased level of
> personal ownership around your professional skills
> growth and business results.
> . . .
> Jana[,] it is expected that you uphold all the basic
> expectations for the representative role. . . .
> Failure to do so will result in being moved to a
> performance Improvement Plan immediately.

– 6 –

(*Id.* at 12-13 & Ex. 4, ECF No. 42-4.) She alleges that these "derogatory statements" were made for the purpose of defaming Plaintiff and injuring her reputation. (*Id.* at 13.)

Plaintiff asserts that the Field Coaching Logs were published to unidentified third parties and to management personnel at Takeda America and Takeda USA. Moreover, she says that Takeda America and Takeda USA knew or should have known that Clark's statements made were false yet published them anyways.

On August 19, 2019, Defendants filed the instant Motion to Dismiss. Defendants argue that Brune's Second Amended Complaint should be dismissed because she fails to state a claim for relief. She cannot sustain a defamation claim, Defendants argue, because the statements she identifies are subject to a qualified privilege and she does not allege malice, bad faith, or excess publication to overcome the privilege. Additionally, her intentional infliction of emotional distress claim fails because she does not allege outrageous or extreme conduct by Defendants, and her negligent infliction of emotional distress claim is barred by the Mississippi Workers Compensation Act.

## II. DISCUSSION

a. <u>Motion to Dismiss Standard</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts all well pleaded facts as true and views them in the light most favorable to Plaintiff. *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199 (5th Cir. 2016). But "the complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

a. <u>Defamation</u>

As an initial matter, some of Brune's defamation claims are untimely. Claims for defamation have a one-year statute of limitations. Miss. Code. Ann. § 15-1-35. "In actions for defamation, Mississippi has adopted the 'single publication' rule," under which the limitations period "begins to run on the date the allegedly defamatory material is first published to a third person . . . ." *Lane v. Strang Commc'ns Co.*, 297 F. Supp. 2d 897, 900 (N.D. Miss. 2003) (citations omitted). Brune filed her original Complaint in state court on January 12, 2017. Therefore, as noted by Defendants, any defamation claim premised upon statements made in the March 4, 2015 Field Coaching Log entry (2d Am. Compl. Ex. 5, ECF No. 42-5) or

in the May 28, 2015 "60 Day Counseling Plan" (*Id.* Ex. 6, ECF No. 42-6) is time-barred.

Under Mississippi law, an ordinary claim for defamation requires the plaintiff to prove: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Inland Family Practice Ctr., LLC v. Amerson*, 256 So. 3d 586, 592 (Miss. 2018). Where, as here, the defendant asserts that a qualified privilege protects the publication of those statements, Mississippi courts employ a bifurcated process. "First, the Court must determine whether the occasion called for a qualified privilege. If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse." *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1052 (Miss. 2005) (citing *Garziano v. E.I. Dupont de Nemours & Co.*, 818 F.2d 380, 386-87 (5th Cir. 1987)).

The Mississippi Supreme Court has explained the circumstances under which publication of otherwise false and defamatory statements is protected by a qualified privilege:

> A communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

*Amerson*, 256 So. 3d at 592 (quoting *Eckman*, 893 So. 2d at 1052); *see also Smith v. White*, 799 So. 2d 83, 86 (Miss. 2001). Communication between employer and employee is one situation in which the Mississippi Supreme Court has explicitly recognized the existence of a privilege. *Barmada v. Pridjian*, 989 So. 2d 359, 362 (Miss. 2008) (citing *Young v. Jackson*, 572 So. 2d 378, 383 (Miss. 1990)).

Brune alleges that Takeda America and Takeda USA were both her employers and that Clark was her direct supervisor. The communications identified by Brune are either just between Clark and herself or also copied Clark's superior, Quin Hatfield.[2] Hatfield, the regional manager, and Clark, the district manager, have an obvious and direct interest in the performance of sales representatives under his supervision. The statements communicated concerned Brune's job performance. Thus, Brune's allegations, accepted as true, establish that the communications at issue were privileged.

A qualified privilege does not protect a defamatory statement, however, where (1) "there is excessive publication to persons not within the 'circle' of those people who have a legitimate and direct interest in the subject matter of the communication" or (2) the defendant acted with malice, which requires "knowledge of falsity or reckless disregard as to the truth or falsity."[3] *Eckman*, 893 So. 2d at

---

[2] Brune also alleges that some of the defamatory statements were published to other people at corporate headquarters, but she does not identify who else besides Quin Hatfield received these communications.

[3] The Court would note that there appears to be conflicting definitions of the malice required to overcome a qualified privilege in Mississippi jurisprudence. In *Barmada v. Pridjian*, the state supreme court stated that the standard is "actual malice":

– 10 –

1053.  Brune's allegations establish neither.  As the Court already determined, Clark communicated the statements to Hatfield, his direct superior.  This was not excessive publication because Hatfield had a legitimate and direct interest in Brune's job performance.  *See Barmada*, 989 at 363 ("[T]he only evidence presented shows that Pridjian made statements to Memorial administrators, doctors, the surgical staff, and an independent reviewer. . . .  [T]hese individuals were directly interested in the matter; and therefore, the qualified privilege applies."); *Hayden v. Foryt*, 407 So. 2d 535, 537 (Miss. 1981) (holding that a supervising doctor's discussion of charges of a fellow doctor's incompetency at meetings with administrators and the hospital's surgical staff was privileged).

Brune also fails to allege that Takeda America or Takeda USA acted with malice by virtue of any of its employees' conduct.  "Where [a] qualified privilege exists, a presumption of good faith arises."  *Amerson*, 256 So. 3d at 590 (quoting *Barmada*, 989 So. 2d at 365).  Brune offers nothing more than the conclusory assertion that Clark's various statements were "false" and "made for the purpose of defaming Plaintiff."  She offers no facts to support this conclusion, and nothing contained in the documents attached to the Second Amended Complaint substantiates this assertion either.  *Cf. Hayne v. The Innocence Project*, No. 3:09-

---

> "Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with the design to willfully or wantonly injure another."

989 So. 2d at 364 (quoting *Young,* 572 So. 2d at 385).  However, Brune's allegations do not even satisfy the less-demanding legal malice threshold.

CV-218-KS-LRA, 2011 WL 198128, at *5 (S.D. Miss. Jan. 20, 2011) ("Plaintiff specifically pled that Defendants exhibited actual malice by editing and distorting facts in an effort to maximize the damage done by the publication, and that Defendants intentionally omitted facts which would mitigate said damage."). Brune pleads facts establishing the privileged nature of the communications at issue, but she fails to plausibly claim that malice or bad faith was behind Clark's supposedly defamatory statements about her job performance. *See Iqbal*, 556 U.S. at 678 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."); *Chalk v. Bertholf*, 980 So. 2d 290, 297 (Miss. Ct. App. 2007) ("Mississippi law requires that a complaint for defamation must provide allegations of sufficient particularity so as to give the defendant or defendants notice of the nature of the complained-of statements.").

Brune argues that it is improper for the Court to dismiss her defamation claim without first allowing for discovery because determining whether a qualified privilege exists and whether Defendants acted with malice "requires factual analysis." (Resp. Opp. 5, ECF No. 50.) While it may often be the case that these issues cannot be resolved without first establishing a factual record, this does not render their resolution impossible under Rule 12(b)(6). Where, as here, the plaintiff's own allegations establish the existence of a qualified privilege[4] and fail to establish malice, the plaintiff has failed to state a claim for which relief may be

---

[4] Brune also argues that the qualified privilege cannot apply to both defendants because Takeda USA maintains it is not Brune's employer, but for purposes of a Rule 12(b)(6) motion, the Court accepts the plaintiff's allegations as true. It does not matter what position Takeda USA has taken to the contrary in pleadings.

granted. *See Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Additionally, the Court would note that Brune's defamation claim remains deficient because she fails to establish which parts of these lengthy log entries and emails were defamatory, or how any parts of them were defamatory. "Without setting forth any information in the complaint regarding . . . how the statements were [defamatory], the allegation that [Defendants] made 'slanderous statements' constitutes a bare legal conclusion with no support in the complaint." *Chalk*, 980 So. 2d at 298. And Defendants are left to guess which parts of these log entries and emails Brune alleges to be defamatory. *See id.* at 299 ("Because the complaint did not contain any information as to the substance or effect of the statements with which the appellants allege they were slandered, Bertholf and Bryant were left to . . . guess which parts of the radio show the appellants alleged slanderous in order to begin their defense."). Brune has accordingly failed to state a plausible claim for defamation.

    b. <u>Intentional Infliction of Emotional Distress</u>

To prevail on a claim for intentional infliction of emotional distress under Mississippi law, the plaintiff must show the following: (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the

defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant. *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906-07 (Miss. 2011). "[T]he conduct alleged must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013) (internal quotation marks omitted). Thus, "liability will not extend to 'insults, indignities, threats, annoyances, petty oppression, or other trivialities.'" *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 304 F. Supp. 3d 514, 524 (N.D. Miss. 2018) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).

The Mississippi Supreme Court has held that "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001). Claims for intentional infliction of emotional distress in such disputes have "usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* "Only in the most unusual of cases does the conduct move out of the realm of an ordinary employment dispute, and into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994).

Brune has failed to meet her pleading burden to state a claim for intentional infliction of emotional distress. Brune recounts a single phone call in which Clark

yelled at her – about which he later apologized – and several field log entries and emails in which Clark criticized Brune for failing to meet certain performance objectives and implement feedback. Although she says these communications falsely represented her job performance, none of the language used was even harsh, let alone extreme and outrageous. (*See Walker v. Statewide Healthcare Servs., LLC*, No. 3:17-CV-1035-CWR-FKB, 2018 WL 2407651, at *2 (S.D. Miss. Mar. 26, 2018) (holding that standard allegations of employment discrimination "do not 'evoke outrage or revulsion.'"). This does not represent a pattern of deliberate, repeated harassment over a period of time, and it does not amount of extreme and outrageous conduct. *See Starks v. City of Fayette*, 911 So. 2d 1030, 1036 (Miss. Ct. App. 2005) (holding that plaintiff's termination from employment with the city did not amount to outrageous and extreme conduct); *but see Hollins v. Wilkinson Cty. Sch. Dist.*, No. 5:17-CV-108-KS-MTP, 2019 WL 3769637, at *7 (S.D. Miss. Aug. 9, 2019) (finding that specific instances of harassment and bullying by supervisors over the course of two school years gave rise to a claim of intentional infliction of emotional distress within an employment context). Because Brune's allegations, accepted as true, amount to nothing more than an employment dispute, she fails to state a claim for intentional infliction of emotional distress.

   c. <u>Negligent Infliction of Emotional Distress</u>

"[T]he tort of negligent infliction of emotional distress requires that [Brune] must plead and prove 'some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the

defendant.'" *Breeden v. Buchanan*, 164 So. 3d 1057, 1069 (Miss. Ct. App. 2015) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells,* 819 So. 2d 1196, 1208 (Miss. 2001)). "[A] plaintiff therefore may not recover emotional distress damages resulting from ordinary negligence without proving some sort of physical manifestation of injury or demonstrable physical harm." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 64 (Miss. 2004) (quoting *Am. Bankers',* 819 So. 2d at 1209).

Defendants argue that Plaintiff's allegations fail to state a claim for negligent infliction of emotional distress for several reasons: (1) her claim is barred by the Mississippi Worker's Compensation Act, Miss. Code Ann. §§ 71-3-6, *et seq.*; (2) Mississippi law does not permit such a claim to be based upon defamation; and (3) she fails to adequately allege a physically-manifested injury. The Court agrees.

Claims for negligent infliction of emotional distress against one's employer "are barred by Mississippi's Workers Compensation Law, Miss. Code §§ 71-3-1 and 71-3-9." *Walker*, 2018 WL 2407651, at *2. Brune's Second Amended Complaint states, "Since the year 2002, up until April of 2016, Plaintiff was employed as a Sales Representative of the Defendants." (2d Am. Compl. 3, ECF No. 42.) Regardless of whether Takeda USA maintains in pleadings that it was never Brune's employer, Brune alleges that Takeda USA was her employer. Thus, accepting her allegations as true, as the Court must, she cannot maintain a negligent infliction of emotional distress claim against Takeda America or Takeda USA.

Additionally, Mississippi law does not recognize a cause of action for negligent infliction of emotional distress premised upon defamation. *Pierce v. Clarion Ledger*, 433 F. Supp. 2d 754, 760 (S.D. Miss. 2006) (citing *Mitchell v. Random House, Inc.*, 865 F.2d 664, 672 (5th Cir. 1989); *Lane v. Strong Commc'ns Co.*, 297 F. Supp. 2d 897, 899 n.1 (N.D. Miss. 2003)); *see also Hayne*, 2011 WL 198128, at *11. Brune alleges that Defendants caused her emotional distress by negligently allowing Clark to share false statements about her work performance with company management. She accordingly cannot maintain a negligent infliction of emotional distress claim premised upon this conduct.

Finally, her negligent infliction of emotional distress claim fails because she has failed to adequately allege the physical manifestation of emotional harm. She merely alleges that Defendants' conduct caused "emotional distress, anxiety, [and] insomnia." (2d Am. Compl. 15, ECF No. 42.) This is insufficient to state a claim for relief. *See Wilson*, 883 So. 2d at 65 (stating that being "very depressed[,] very upset[,] emotional[, and] not able to sleep" is "insufficient to sustain an award of damages for mental anguish"

### III. CONCLUSION

The Court has determined that Brune's Second Amended Complaint fails to state a claim for which relief may be granted. Because she has previously been granted leave to amend to cure deficiencies in her pleadings, she will not again be granted the opportunity to attempt to state a claim. Her claims will therefore be dismissed with prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [45] Motion to Dismiss Plaintiff Jana Brune's Second Amended Complaint filed by Defendants Takeda Pharmaceuticals U.S.A., Inc. and Takeda Pharmaceuticals America, Inc. is **GRANTED**. The claims in Plaintiff's Second Amended Complaint are **dismissed with prejudice**.

**SO ORDERED AND ADJUDGED** this the 25th day of November, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE